# CIRCUIT COURT OF ROCKINGHAM COUNTY

Marshall Magee et al.

v.

William W. Runion et al.

June 17, 2010

Case No. CL09-206

BY JUDGE JAMES V. LANE

This case came before the Court for trial on April 29 and May 20, 2010. Having reviewed counsel's memoranda and argument and having examined the evidence in the case, the Court now finds for the Plaintiffs.

The Court will address each of Plaintiffs' theories in turn. First, Plaintiff prays for "[a] judgment declaring the validity and the width of the right of way established by deed in 1918." From the evidence presented, the Court finds that the easement granted in the 1918 deed (Pl. Compl. Ex. G) did not extend across what is now William W. Runion's property. Rather, the deeded easement ended at the "corner in the Fawley line," which the Court finds from the evidence to be the southeastern corner of tract 19-A-36.

Next, Plaintiffs ask the Court to declare "the existence and width of a right of way by necessity over Defendants' parcels for the Plaintiffs' benefit." The Court finds that no easement of necessity arose against Defendant's tract 19-A-36 at the time of the 1918 conveyance for two reasons. First, the grantor in the 1918 deed did not own or otherwise retain 19-A-36 at the time of that conveyance, and therefore no implied easement could arise against it. Second, at the time of severance in 1918, the conveyed parcel had a means of ingress and egress, specifically the right of way set forth in the same deed and leading south to what is now Route 813.

At trial, Plaintiffs also asked the Court to find an express easement by oral grant or oral modification of the 1918 deeded easement. Plaintiffs' failure to plead this theory in their Complaint is immaterial because they cannot recover under it based on the evidence. There was conflict in the evidence regarding what James E. Runion said at the time the road was built in 1976. However, it is not contradicted that, in 1976, James E. Runion refused to sign a deed of easement for the road that was built across his land. Additionally, James E. Runion in 2003 signed a formal easement agreement across another part of his property (Def. Ex. 6), which suggests that he knew how to convey an easement if he wanted to do so. The Court, therefore, finds that James E. Runion, Defendant's father, did not orally grant an express easement to Cheryl Magee or other Plaintiffs, and thus need not consider the Statute of Frauds and part performance issues.

Plaintiffs are left with their prayer that the Court declare "the existence and width of a right of way by prescription over Defendants' parcels for the Plaintiffs' benefit." The evidence showed that, when the lower part (now "pig trail") of the deeded right of way was condemned as part of the George Washington National Forest, certain Plaintiffs and predecessors approached James E. Runion and told him that they had a right of way and needed a way out across his land. James E. Runion refused to allow a road cutting diagonally across his property as it would "cut his field in half." Rather, he allowed the road to be built at the lower border of his tract, essentially extending a line from the 1918 deeded right of way to Route 611. As is clear from the photographic evidence, James E. Runion was present during the construction of the road in 1976. While Plaintiffs and their predecessors had no legal claim to an easement across his land, the Court finds that James E. Runion mistakenly believed that they had such a right and thus allowed the construction of the road. As such, the Court finds that he never gave permission or otherwise granted a license to any of the users of the road.

"The foundation of a right by prescription is acquiescence of the owner of the servient tenement in the acts relied on to establish the easement by prescription. Acquiescence is here used in its ordinary sense; it does not mean license or permission in the active sense, but means passive assent or submission, quiescence, or consent by silence." 25 Am. Jur. 2d, *Easements and Licenses*, § 61. "In other contexts, the Supreme of Virginia has said that 'acquiescence... is ... the failure to protest or object'." *Solid Gold Corp. v. Gehr*, 50 Va. Cir. 332 (Warren County 1999) (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74 (1983)).

However, The Supreme Court of Virginia has also explained:

> An easement will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permissive use may continue. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter's use of the easement is in common with its use by others.

*Martin v. Proctor*, 227 Va. 61 (1984).

When confronted with a claim of right to an easement across his land, James E. Runion acquiesced. Alfred Runion testified that his father never told the Plaintiffs that they could use the road, but rather that he told Alfred that he would allow them to use it. Therefore, even if James E. Runion believed that they had no rights to build and use a road across his land, he never actually communicated permission to them. And because he believed that the landlocked parties had a legal right to build a road across his land, any assent would not amount to "permission" in the legal sense of that word.

The issue for the Court, therefore, is intensively factual as to what rights each plaintiff did or did not acquire by their adverse use of the road. The plaintiffs' evidence has established that their use of the easement has been actual, exclusive, continuous, hostile, open, visible and notorious under a claim of right since the construction of the thirty foot easement in 1976. Plaintiffs' use has been consistent with the nature and character of the property. Although the traveled portion is approximately twelve to fifteen feet wide, the right-of-way has been continuously cleared and maintained to a thirty foot width throughout its use.

With regard to Mr. Melkersen's assertion that the Dead Man's Statute would bar plaintiffs' testimony, the court does not recall any objection. Further, the statute is not a bar if there is corroboration which, in fact, was presented in the testimony and exhibits.